(83 Misc. Rep. 119.)

### INTERBORO BREWING CO., Inc., v. INDEPENDENT CONSUMERS' ICE CO., Inc.

(Supreme Court, Appellate Term, First Department. December 15, 1913.)

1. SALES (§ 128*)—"RESCISSION"—STATUTE.

　　Under Sales Act (Laws 1911, c. 571) § 150, subd. 2, providing that, when a buyer has been granted a remedy by rescission, etc., no other remedy can thereafter be granted, the buyer refused to receive deliveries because of the seller's breach of warranty in the quality, and the seller's unequivocal refusal to deliver a better quality, while a termination of the contract, was not a "rescission," so as to defeat other remedies by the buyer.

　　[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 257, 277; Dec. Dig. § 128.*

　　For other definitions, see Words and Phrases, vol. 7, p. 6139.]

2. SALES (§ 427*)—BREACH OF WARRANTY—REMEDY OF BUYER.

　　The buyer of goods under a contract warranting their quality may, as to goods already delivered and accepted, sue for damages for breach of warranty.

　　[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1159; Dec. Dig. § 427.*]

3. SALES (§ 405*)—REMEDIES OF BUYER—ACTION FOR DAMAGES.

　　Where a seller refuses to deliver goods in the future according to the terms of his executory contract, the buyer may recover the damages resulting from such breach.

　　[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1147–1155; Dec. Dig. § 405.*]

4. SALES (§ 391*)—CONTRACT—DEPOSIT FOR SECURITY.

　　Under a contract for the sale and delivery of a certain quantity of ice daily, with a deposit by the buyer to secure performance of the contract, there was an implied covenant on the part of the seller to return the money forthwith, if by its own act it prevented the buyer's performance of the contract.

　　[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1110–1127; Dec. Dig. § 391.*]

Appeal from City Court of New York, Special Term.

Action by the Interboro Brewing Company, Incorporated, against the Independent Consumers' Ice Company, Incorporated. From an order sustaining a demurrer to three counterclaims, defendant appeals. Reversed, and demurrer overruled, with leave to plaintiff to reply.

Argued December term, 1913, before SEABURY, GUY, and BIJUR, JJ.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Louis Halle, of New York City (Oswald N. Jacoby, of New York City, of counsel), for appellant.
Henry A. Rubino, of New York City, for respondent.

BIJUR, J.   The complaint sets out a cause of action for the agreed price of ice delivered by plaintiff to defendant for the period September 1 to 13, 1913, pursuant to an agreement between the parties dated April 22d of that year. The counterclaims plead the agreement between the parties, from which it appears that plaintiff agreed to furnish defendant with ice "satisfactorily frozen so as to be merchantable" at an agreed price, the same to be delivered daily and paid for bimonthly. The defendant deposited with plaintiff $3,000 "for the faithful performance of the conditions under this agreement," which, if the defendant "faithfully carries out the terms and covenants in this agreement up to and including December 31, 1913," the plaintiff agreed to return to the defendant.

Under the first counterclaim the defendant alleges that the ice delivered by plaintiff up to the time of their disagreement did not conform to the warranty to defendant's damage of over $6,000. The defendant also pleads that on September 15, 1913 (the time of the disagreement), the defendant notified plaintiff that the defendant would not receive this unsatisfactory character of ice in the future, and that plaintiff informed the defendant that it would make no deliveries of other quality or character; that the next deliveries offered by the plaintiff were not in conformity with the warranty, and were, therefore, rejected by the defendant, which then "terminated the agreement." As a second counterclaim, defendant asks damages for plaintiff's failure to perform the remaining term of the agreement (September 15 to December 31, 1913). The third counterclaim seeks the return of the $3,000 cash security.

The learned court below was evidently of opinion, and respondent now insists in its brief, that defendant has rescinded the contract, and that, consequently, it cannot successfully maintain the first and second counterclaims, because, under L. 1911, c. 571, § 150 (commonly known as the Sales Act), the buyer by rescinding has exercised its election and cannot now recover damages. Subdivision 2 of the act renders each of the four remedies exclusive. The third counterclaim has been condemned as prematurely interposed.

[1] I do not agree with any of these contentions. In the first place, although the defendant has unfortunately used a phrase likely to be misunderstood when claiming that it has "terminated the agreement," these words must be read in connection with the remaining allegations of the counterclaim, from which it clearly appears that defendant alleges that as to the past deliveries plaintiff has broken the warranty, and as to future deliveries has, by its unequivocal declaration, broken the agreement by refusal to perform it according to the terms thereof, and that defendant is entitled to damages for these respective breaches. Although the contract has, in a sense, been thus terminated, because it is no longer being performed by either party—not by the plaintiff, because it has refused to perform, and not by the defendant, because plaintiff's refusal has made defendant's performance impos-

sible—such termination, if that term be applicable, is in no wise equivalent to a rescission. The language of the Court of Appeals in Elterman v. Hyman, 192 N. Y. 113, 126, 84 N. E. 937, 942 (127 Am. St. Rep. 862, 15 Ann. Cas. 819), is directly in point. The court there said:

"The termination of a contract as to the future by one party, owing to the default of the other, is a rescission neither ab initio nor in any true sense."

Since, therefore, there has been no rescission of the contract pursuant to paragraph "d" of subdivision 1 of section 150 of the act, there is no need of discussing the effect of a rescission thereunder.

[2, 3] I can find nothing in the act to change the rules of law as they had previously existed, and as applicable to the case at bar, that in a contract for the delivery of goods with warranty of their quality a purchaser may, as to goods already delivered and accepted by him, sue for damages for breach of the warranty, and, where the seller refuses to deliver goods in the future according to the terms of the contract, recover also from seller, as in every case of breach of an executory contract, the damages resulting from such a breach.

[4] As to the third counterclaim, while it is true that plaintiff in the agreement promised to return the deposit only on December 31, 1913, the deposit was solely to secure the performance by the defendant of the terms of the agreement, which performance has now been rendered impossible by plaintiff's refusal to carry out the contract. For the purposes of this appeal it matters not whether we regard the contract as terminated, and therefore the money in the hands of the plaintiff as having become immediately the property of the defendant, who is thereupon entitled to sue therefor as "for money had and received" or whether—which I regard as the more correct view—we treat the agreement, upon familiar principles, as containing an implied covenant on the part of the plaintiff to return the money forthwith, if by its own act it prevents defendant's performance of the agreement to secure which plaintiff was entitled to retain possession of the money until December 31st. See Genet v. Del. & H. Canal Co., 136 N. Y. 593, 32 N. E. 1078, 19 L. R. A. 127; Risley v. Smith, 64 N. Y. 576.

Order reversed, with $10 costs and disbursements, and demurrer overruled, with $10 costs, with leave to plaintiff to reply to the counterclaims within six days, upon payment of costs in this court and in the court below. All concur.